UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL E. CARPENTER                          :        Civil Action No. _____
                                             :
                 Plaintiff,                  :
                                             :
            - against -                      :                    JUDGE ROMAN
                                             :
UNIVERSITAS EDUCATION, LLC                   :
                                             :
                 Defendant.                  :

---

### DANIEL E. CARPENTER'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO QUASH

---

David A. Slossberg, Esq.
Hurwitz, Sagarin, Slossberg & Knuff, LLC
147 North Broad Street
Milford, CT 06460-0112
Telephone: (203) 877-8000
Fax: (203) 878-9800
DSlossberg@hssklaw.com

*Attorneys for Plaintiff*
*Daniel E. Carpenter*

## I.  INTRODUCTION

Pursuant to Fed. Rule Civ. Pro. 45(d)(3)(a), Daniel E. Carpenter ("Carpenter") submits this Memorandum of Law in Support of His Motion to Quash two subpoenas that the Defendant, Universitas Education, LLC ("Universitas"), has served upon Benistar Admin Services, Inc. ("BASI").  These subpoenas improperly seek the production of documents and communications that may contain privileged attorney-client communications between and among Mr. Carpenter and attorneys providing legal advice to him.  The purpose of this motion is to protect against disclosure of such privileged attorney-client communications.

## II.  BACKGROUND FACTS.

Mr. Carpenter represents the following facts in support of this Motion:

1.  The subpoenas that are the subject of this Motion to Quash are attached hereto as Exhibits A and B (the "Subpoenas").

2.  Universitas issued the Subpoenas in connection with a civil action pending in the United States District Court for the District of Massachusetts captioned <u>Universitas Education, LLC v. Jack E. Robinson, III a/k/a Jack E. Robinson</u>, and bearing docket number 15-cv-11848-DPW (the "Robinson Action").

3.  Neither Mr. Carpenter nor BASI are parties to the Robinson Action.

4.  The Subpoenas seek the production of documents by BASI at the offices of Universitas' counsel, which are located in the Southern District of New York.

5.  The target of the subpoenas, BASI, owns the computer servers upon which Mr. Carpenter maintained one or more email accounts.

6.  Mr. Carpenter utilized these email accounts to communicate with attorneys and to obtain legal advice.

7.     The Subpoenas seek the production of, *inter alia*, documents and communications relating to matters that Carpenter may have discussed with his attorneys using an email account hosted on a server owned by BASI.

8.     Mr. Carpenter maintained a reasonable expectation of privacy in the subject email accounts and seeks to preserve the privilege of attorney-client communications on these accounts.

## III.     ARGUMENT

Pursuant to Fed. R. Civ. Pro. 45(d)(3), "the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies."   In the instant case, the Subpoenas seek the production of documents and communications that may contain privileged attorney-client communications between and among Mr. Carpenter and attorneys providing legal advice to him. In such circumstances, it is appropriate for the Court to preclude production of such privileged information.  See e.g., Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP, No. 03 CIV. 5560(RMB)HBP, 2008 WL 4452134, at *12 (S.D.N.Y. Oct. 2, 2008) (granting motion to quash subpoena to the extent it seeks production of attorney-client communications); In re BCE W., L.P., No. M-8-85, 2000 WL 1239117, at *3 (S.D.N.Y. Aug. 31, 2000) (same).

## IV.     Conclusion.

For the foregoing reasons, Mr. Carpenter hereby moves this Court for an order quashing the Subpoenas to the extent they seek production of Mr. Carpenter's privileged attorney-client communications.

Dated: Milford, CT
March 17, 2017

THE PLAINTIFF

BY: _David Slossberg_

DAVID A. SLOSSBERG [DS0566]
Hurwitz, Sagarin, Slossberg & Knuff, LLC
147 North Broad Street
Milford, CT  06460-0112
Telephone:  (203) 877-8000
Fax: (203) 878-9800
DSlossberg@hssklaw.com
Attorney for Plaintiff

## **CERTIFICATION**

This is to certify that on March 17, 2017, a copy of the foregoing was severed by email on the following parties:

Paula K. Colbath (Counsel for Universitas)
Loeb &Loeb LLP
345 Park Avenue
New York, NY 10154
pcolbath@loeb.com

Seth L. Marcus (Counsel for Jack E. Robinson, III)
The Law Offices of Seth L. Marcus
Suite 101
777 Westchester Ave.
White Plains, NY 10604
212-686-2555
seth@slmarcuslaw.com

Dan E. LaBelle (Counsel for Benistar Admin Services, Inc.)
Halloran & Sage
315 Post Road West
Westport, CT 06880
LaBelle@halloransage.com

DAVID A. SLOSSBERG

# EXHIBIT A

# UNITED STATES DISTRICT COURT

### for the
### District of Massachuetts

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 15-cv-11848-DPW |
| | ) | |
| JACK E. ROBINSON, III a/k/a JACK E. ROBINSON | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Benistar Admin Services, Inc., 10 Tower Lane, Avon, CT 06001

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
See Schedule A attached hereto.

| Place: Loeb & Loeb LLP<br>345 Park Avenue<br>New York, New York 10154 | Date and Time:<br>March 20, 2017, 10:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: March 3, 2017

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | /s/ Paula K. Colbath |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Universitas Education, LLC _____, who issues or requests this subpoena, are:

Paula K. Colbath, Esq., Loeb & Loeb LLP, 345 Park Avenue, New York, NY 10154 (212) 407-4000, pcolbath@loeb.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.

# PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

_____

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

　(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
　　(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
　　(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
　　　(i) is a party or a party's officer; or
　　　(ii) is commanded to attend a trial and would not incur substantial expense.

　(2) *For Other Discovery.* A subpoena may command:
　　(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
　　(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

　(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

　(2) *Command to Produce Materials or Permit Inspection.*
　　(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
　　(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
　　　(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
　　　(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

　(3) *Quashing or Modifying a Subpoena.*
　　(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
　　　(i) fails to allow a reasonable time to comply;
　　　(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
　　　(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
　　　(iv) subjects a person to undue burden.
　　(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
　　　(i) disclosing a trade secret or other confidential research, development, or commercial information; or

　　　(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
　　(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
　　　(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
　　　(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

　(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
　　(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
　　(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
　　(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
　　(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

　(2) *Claiming Privilege or Protection.*
　　(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
　　　(i) expressly make the claim; and
　　　(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
　　(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

American LegalNet, Inc.
www.FormsWorkFlow.com

## DEFINITIONS AND INSTRUCTIONS

1.      This discovery request incorporates and utilizes the Uniform Definitions in Discovery Requests specified in Local Rule 26.5 of United States District Court for the District of Massachusetts, copy attached hereto as **Exhibit 1**, as well as the additional terms listed below which are specific to this litigation:

2.      Any reference to an entity, trust, or plan (*e.g.*, a corporation, LLC, company, plan, or trust) also refers to that entity's predecessors in interest, successors in interest, trustee(s), plan sponsor(s), administrator(s), affiliate(s), affiliated company and/or companies, designee(s), owner(s), shareholder(s), member(s), manager(s), partner(s), entity and/or entities, director(s), officer(s), alter ego(s), agent(s), *de facto* agent(s), *de facto* manager(s), adviser(s), employee(s), representative(s), attorney(s), custodian(s), nominee(s), and any other person or entity retained by or under the direction or control of those parties or acting for or on behalf of those parties.

3.      The term "**Universitas**" as used herein refers to the Plaintiff, Universitas Education, LLC.

4.      The term "**Robinson**" as used herein refers to the Defendant, Jack E. Robinson, III, a/k/a Jack E. Robinson, his employees, agents, servants, attorneys, accountants, advisors, representatives, and any other person acting for him or on his behalf.

5.      The term "**Carpenter**" as used herein refers to Daniel E. Carpenter, his agents, servants, attorneys, representatives, and any other person acting for him or on his behalf.

6.      The term "**Bursey**" as used herein refers to Wayne Bursey, his agents, servants, attorneys, representatives, and any other person acting for him or on his behalf.

7. The term "**BASI**" as used herein refers to Benistar Admin Services, Inc., and its corporate parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, officers, directors, stockholders, owners, members, managers, agents, servants, employees, attorneys, representatives, and any other person or entity retained by or under the direction or control of those parties or acting for or on behalf of those parties.

8. The term "**Lincoln**" as used herein refers to The Lincoln National Life Insurance Company, Lincoln Life Insurance Company, and Lincoln Financial Group, and their corporate parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, officers, directors, stockholders, owners, members, managers, agents, servants, employees, attorneys, representatives, and any other person or entity retained by or under the direction or control of those parties or acting for or on behalf of those parties.

9. The term "**Spencer**" as used herein refers to Sash A. Spencer, his agents, servants, attorneys, representatives, and any other person acting for him or on his behalf.

10. The term "**Caldwell**" as used herein refers to , individually or collectively, Caldwell Life Strategies Corporation, Caldwell Life Strategies LLC, Caldwell Funding Corporation, and Caldwell Life Holdings LLC, and their corporate parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, officers, directors, stockholders, owners, members, managers, agents, servants, employees, attorneys, representatives, and any other person or entity retained by or under the direction or control of those parties or acting for or on behalf of those parties.

11. The term "**Plainfield**" as used herein refers to Plainfield Asset Management LLC, and its corporate parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, officers, directors, stockholders, owners, members, managers, agents, servants, employees,

attorneys, representatives, and any other person or entity retained by or under the direction or control of those parties or acting for or on behalf of those parties.

12.     The term "**Ridgewood Finance**" as used herein refers to Ridgewood Finance Inc. and/or Ridgewood Finance II LLC, and their corporate parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, officers, directors, stockholders, owners, members, managers, agents, servants, employees, attorneys, representatives, and any other person or entity retained by or under the direction or control of those parties or acting for or on behalf of those parties.

13.     The term "**Robinson Declaration**" as used herein refers to the Declaration submitted by Robinson under oath in the Arbitration dated November 30, 2010.

14.     The term "**Confidential Settlement and Indemnification Agreement**" refers to a document titled "Confidential Settlement and Indemnification Agreement," dated October 26, 2009, between Grist Mill Capital, LLC and the Charter Oak Trust Welfare Benefit Plan.

15.     The term "**Alleged Carpenter Enterprise Member**" as used herein includes, for purposes of this document request, each of Carpenter; Molly Carpenter; Bursey; Robinson; J. Edward Waesche IV; Donald Trudeau ("Trudeau"); Kathy Kehoe; Amanda Rossi; Guy Neuman, Caroline Carpenter, Adult Risk Indemnity Association, LLC; Avon Capital, LLC formed under the laws of Delaware, Nevada, Connecticut and/or Wisconsin; BASI; BCNY Litigation Group, LLC; Benefit Concepts, Inc.; Benefit Concepts Advisors, LLC; Benefit Concepts New York; Benefit Plan Advisors, LLC; Benistar; Benistar Ltd.; Benistar 419 Plan Services; Benistar Client Services, Inc.; Benistar Insurance Group; Benistar Insurance Group Holdings, LLC; Benistar Employer Services Trust Corporation; Benistar Property Exchange Transfer Company f/k/a Benistar Property Exchange Trust Company, Inc.; Birch Hill Partners; BPETCO Litigation

3

Group; Caroline Financial Group, Inc.; Carpenter Financial Group Inc.; Carpenter Financial Group, LLC; Capital City Partners, LLC ; Charter Oak Trust; Charter Oak Trust 2009; Charter Oak Litigation Trust; Birch Hill Partners; Grist Mill Capital LLC; Grist Mill Holdings, LLC; Grist Mill Trust; Grist Mill Trust Welfare Benefit Plan; Hanover Trust Company; Moonstone Partners, LLC; Nova Group, Inc.; Nova Benefit Plans, LLC; Nova Group Holdings, LLC; Nova Partners; Phoenix Capital Management, LLC; Sickness Accident Disability Indemnity Plan and Trust; SADI Trust 2005; TPG Group, Inc.; U.S. Property Exchange; U.S. Benefits Group, Inc.; Worthy Investments, LLC; Carpenter Family Remainder Trust and each of their respective representatives, officers, directors, members, managers, employees, agents, servants, attorneys, accountants, subsidiaries, affiliates, any other person acting for it or on its behalf, and any other person controlled, directed, owned, related to or affiliated with, directly or indirectly, any of the individuals or entities included above.

16.    "You" or "Your" as used herein refers to BASI.

## DOCUMENT REQUESTS

1.    All documents and communications, including but not limited to employment agreements, concerning Robinson's employment with BASI and any Alleged Carpenter Enterprise Member from January 1, 1994 to present.

2.    All Form W-2s and Form 1099s issued to Robinson from January 1, 1994 to the present.

3.    All documents and communications concerning Ridgewood Finance, Plainfield, and/or Caldwell Life Strategies, or any of their attorneys, officers, directors or affiliates, drafted

4

by Robinson, addressed to Robinson, or in which Robinson was carbon copied or blind carbon copied, from January 1, 2010 through December 31, 2011.

4.    All documents and communications, including but not limited to all negotiations, concerning the Settlement Agreement with Ridgewood Finance, effective as of September 30, 2010.

5.    All documents and communications concerning the Robinson Declaration, copy attached hereto as **Exhibit 2**, including but not limited to all documents and communications concerning any due diligence performed by Robinson regarding the statements in the Robinson Declaration.

6.    All documents concerning payment to Robinson by or on behalf of any Alleged Carpenter Enterprise Member.

7.    All communications (including all Communications with Bursey, Trudeau or Carpenter and drafts thereof), financial information and all other Documents concerning Bursey's November 12, 2010 Affidavit submitted in the Arbitration, copy attached hereto as **Exhibit 3**.

8.    All communications concerning, and drafts of, the Complaint filed on May 5, 2009 in the United States District Court for the District of Connecticut, Civil Action No. 3:09-cv-00735-AWT, styled *Wayne Bursey, Trustee of the Charter Oak Trust Welfare Benefit Plan v. The Lincoln National Life Insurance Company.*

9.    All documents (including drafts) and Communications (including emails) concerning Bursey's letters to Lincoln, including but not limited to, Bursey's letters to Lincoln

dated October 22, 2008, December 11, 2008, December 30, 2008, January 30, 2009, March 6, 2009, April 22, 2009 and April 27, 2009.

10.    All documents and communications concerning and/or discussing the Confidential Settlement and Indemnification Agreement.

11.    All documents sufficient to identify all attorneys who were involved in the negotiation, drafting or execution of the Confidential Settlement and Indemnification Agreement or knowing its existence before October 2013.

12.    Robinson's videotaped deposition video, and any deposition transcripts, from his deposition in the SDNY Action.

13.    All documents sent to or from the United States Attorneys' Office.

14.    A copy or mirror image of the hard drive for any computers used by Robinson.

15.    All documents and communications concerning the payment, disposition, and/or potential or actual past or current location of any proceeds from any insurance policy issued on the life of Sash Spencer.

16.    All documents showing the retention of Robinson or any firm with which Robinson was or is affiliated, as legal counsel.

17.    All documents and communications which evidence, report, constitute or concern any invoices by or directly or indirectly on behalf of Robinson, or any firm with which he was affiliated, concerning any legal services or other services rendered to any Alleged Carpenter Enterprise Member from January 1, 2002 to the present, including all engagement letters, billing

records, time sheets or other records of time spent on any matter, invoices, correspondence, email communications and electronic records.

12700355

# EXHIBIT 1

# RULE 26.5    UNIFORM DEFINITIONS IN DISCOVERY REQUESTS

**(a) Incorporation by Reference and Limitations.** The full text of the definitions set forth in paragraph (c) is deemed incorporated by reference into all discovery requests, but shall not preclude

(1) the definition of other terms specific to the particular litigation;

(2) the use of abbreviations; or

(3) a narrower definition of a term defined in paragraph (c).

**(b) Effect on Scope of Discovery.** This rule is not intended to broaden or narrow the scope of discovery permitted by the Federal Rules of Civil Procedure.

**(c) Definitions.** The following definitions apply to all discovery requests:

(1) *Communication.* The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

(2) *Document.* The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

(3) *Identify (With Respect to Persons).* When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(4) *Identify (With Respect to Documents).* When referring to documents, "to identify" means to give, to the extent known, the

(a) type of document;

(b) general subject matter;

(c) date of the document; and

(d) author(s), addressee(s), and recipient(s).

(5) *Parties.* The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(6) *Person.* The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

(7) *Concerning.* The term "concerning" means referring to, describing, evidencing, or constituting.

(8) *State the Basis.* When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall

> (a) identify each and every document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

> (b) identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

> (c) state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory; and

> (d) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

*Adopted effective October 1, 1992.*

# EXHIBIT 2

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | ) | NO. 13 195 Y 001558 10 |
| | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NOVA GROUP, INC., | ) | |
| | ) | |
| Respondent. | ) | NOVEMBER 30, 2010 |

## DECLARATION OF JACK E. ROBINSON

JACK E. ROBINSON, being duly sworn, declares as follows:

1.      I am an authorized representative of respondent Nova Group, Inc. ("Nova"), am over the age of eighteen, and believe in the obligation of an oath.

2.      I submit this declaration on my personal knowledge and in response to the Order dated November 24, 2010.

3.      Nova is the Sponsor, Named Fiduciary, Named Trustee, and Administrator of the Charter Oak Trust Welfare Benefit Plan (the "Plan").

4.      I am familiar with the Plan's operations, assets, liabilities and financial condition, and state that the Plan has the current ability to satisfy a judgment of $30 million.

5.      However, I am also familiar with facts and documents which show that there is no need for the representation contained in Paragraph 4 above because claimant Universitas Education, LLC ("Universitas") is not entitled to **any** benefits under the Plan.

6.      In further support of the representation contained in Paragraph 5 above, I am familiar with and have personal knowledge of the following:

(a)     the purpose, development, design and commencement of the Plan in October 2006;

(b)     the involvement of Grist Mill Capital, LLC ("GMC") with respect to funding premiums paid by the Plan;

(c)     the participation in the Plan by Mr. Sash A. Spencer ("Spencer") and his selection of a $20 million Death Benefit instead of a $50 million Death Benefit on the Plan Adoption Agreement that he signed on March 19, 2007;

(d)     Mr. Spencer's agreements with GMC regarding the funding of certain policies on his life for his participation in the Plan;

(e)     the erroneous and unauthorized distribution by insurance brokers of an early draft of a plan document in December 2006 and the completion of the official Plan document in January 2007;

(f)     Mr. Spencer's designation of Universitas first as his *revocable* and then later as his *irrevocable* beneficiary under the Plan;

(g)     Mr. Spencer's misrepresentations to the Plan and Lincoln National Life Insurance Company ("Lincoln") with respect to his intentions to use the Plan to engage in a prohibited life settlement transaction, the true nature of Universitas, and the use to which Universitas was to put any benefits received from the Plan;

(h)     Mr. Spencer's unexpected death in June 2008;

(i)     the numerous communications and discussions (including threats of litigation), from literally a few days after Mr. Spencer's death in June 2008 until the commencement of this arbitration by Universitas two years later in June 2010, between and among Nova, the Plan, Mr. Spencer's widow, Universitas, Mr. Spencer's employer

2

Holding Capital Group, Inc. ("Holding Capital"), insurance broker Bruce Mactas ("Mactas"), and their respective legal and financial advisors;

(j)     the facts that notwithstanding all of the aforementioned communications and discussions, that Universitas was represented by counsel at all relevant times, and that Universitas had a copy of the Plan document in its possession at all relevant times, Universitas did not file a claim for benefits under the Plan until **several months after** the claims deadline had expired, and only after it had been instructed several times to do so by Nova;

(k)     the draft July 2008 agreement whereby Universitas expressed its intention to disclaim **all** Plan benefits in return for a $5 million charitable contribution by Mr. Spencer's widow;

(l)     the illicit and unlawful November 2008 settlement agreement whereby Holding Capital and Mactas were to receive illegal distributions of Plan benefits;

(m)     the back-dated September 2009 "Termination Agreement" whereby the illegal distributions described in Paragraph 6(l) above were allegedly rescinded;

(n)     Nova's denial of Universitas' claim for benefits under the Plan;

(o)     the facts that Universitas filed an appeal of the denial of its claim for Plan benefits with the wrong person at the wrong address and, as a result, the appeal was not received by Nova until **two weeks after** the deadline for filing an appeal had expired;

(p)     Universitas' multiple threats of litigation against the Plan in violation of the Plan's provisions – both before and during this arbitration;

(q)     Nova's denial of Universitas' appeal of the denial of its claim for Plan benefits;

(r)     Nova's discovery after the arbitration had commenced that Holding Capital had changed its structure and, notwithstanding the Termination Agreement, retains an expectancy to receive illegal distributions of Plan benefits; and

(s)     the facts that had Mr. Spencer not died unexpectedly but had lived to consummate his oral agreement with GMC later in 2008, Universitas would have received a total payment of $1.8 million and GMC would have received ownership of the Lincoln insurance policies on Mr. Spencer's life.

7.     Unbeknownst to Nova at the time, in December 2006, Mr. Spencer and Mactas planned to engage in a prohibited life settlement transaction by using the Plan to obtain **$50 million** in life insurance on Mr. Spencer's life and, after the two-year contestability period expired on the life insurance policies in December 2008, terminate Mr. Spencer's participation in the Plan, acquire ownership of the policies, and then sell the policies in the secondary market for a total profit to Mr. Spencer and Mactas of between $10 million and $14 million (see Exhibit 1).

8.     Although Mactas caused Mr. Spencer to execute various Plan documents in December 2006, the final Plan documents executed by Mr. Spencer on March 19, 2007 automatically superseded and replaced all prior Plan documents (not only because they were executed later in time but because the Plan Documents executed in December 2006 were drafts).  This is evidenced by the new Adoption Agreement executed by Mr. Spencer on March 19, 2007 whereby Mr. Spencer, **in his own handwriting**, crossed out the initial $50 million Death Benefit that he and Mactas had envisioned in December 2006 and, instead, selected a **$20 million Death Benefit** (see Exhibit 2).

9.      Further evidence of Mr. Spencer selecting a $20 million Death Benefit instead of a $50 million (or $30 million) Death Benefit is found in Exhibit 3, where Mr. Spencer **again in his own handwriting** crossed out the $50 million Death Benefit and instead wrote "$20 MILION[sic]."

10.     Thus, the maximum potential Death Benefit in this case is not $30 million as claimed by Universitas but rather $20 million as chosen by Mr. Spencer, **in his own handwriting**, on two separate occasions.

11.     Although the total Death Benefit is $20 million, the Plan obtained insurance coverage on Mr. Spencer's life in the amount of $30 million by virtue of an earlier $10 million policy taken out by the Plan in December 2006.  It is not unusual for the Plan to "overfund" its contingent liability if, as and when it has the opportunity to do so in order to provide more funding to the Plan, and especially when there is no up-front "cost" to the insured to acquire the insurance coverage.

12.     Since GMC provided **all** of the money to obtain the insurance coverage on Mr. Spencer's life (a fact which Universitas concedes), Mr. Spencer, Mactas and Mr. Daniel E. Carpenter (on behalf of GMC) executed a Disclosure, Acknowledgement & Certification Agreement dated March 19, 2007 describing how the net Death Benefit would be calculated (see Exhibit 4).  The calculation according to that agreement, **using the draft version of the Plan document that does *NOT* include the 80% pay-out provision in Plan § 6.01**, is as follows:

5

Total Death Benefit $ 20,000,000.00

**Less:**

(i)    repayment of all payments, contributions and related costs
      funded by GMC on the $30 million in policies (§10(a))

        premiums            $ 2,322,305.79

        funding costs       $    835,394.83

        Total amount funded                    $ 3,157,700.62

(ii)   Origination Fee of 20% of the total amount funded (§10(b))    $    631,540.12

(iii)  Placement Fee of 2% of the total face amount of the
       $30 million in policies (§10(c))                        $   600,000.00

Total Deductions                                          $ 4,389,240.74

**Equals:**

**Net Death Benefit**                                 **$ 15,610,759.26**

      13.    Thus, far from $30 million or even $20 million, the **maximum** benefit to
which Universitas could be entitled under its own "best case" scenario (*i.e.*, the draft
version of the Plan document that does not include the 80% pay-out provision in Plan §
6.01) is roughly $15 million.

      14.    However, the official version of the Plan does include the 80% pay-out
provision in Plan § 6.01. Under the official version of the Plan, the **maximum** benefit to
which Universitas could be entitled is calculated as follows:

| | | |
|---|---|---|
| Total Death Benefit | | $ 20,000,000.00 |
| (i) 80% of the amount in the Adoption Agreement (Plan § 6.01) | | $ 16,000,000.00 |

**Less:**

| | | |
|---|---|---|
| (ii) repayment of all payments, contributions and related costs funded by GMC on the $30 million in policies (§10(a)) | | |
| premiums | $ 2,322,305.79 | |
| funding costs | $ 835,394.83 | |
| Total amount funded | | $ 3,157,700.62 |
| (iii) Origination Fee of 20% of the total amount funded (§10(b)) | | $ 631,540.12 |
| (iv) Placement Fee of 2% of the total face amount of the $30 million in policies (§10(c)) | | $ 600,000.00 |
| Total Deductions | | $ 4,389,240.74 |

**Equals:**

**Net Death Benefit**                                                      **$ 11,610,759.26**

15.     Thus, far from $30 million, $20 million, or even $15 million, the **maximum** benefit to which Universitas could be entitled under the official version of the Plan is roughly $ 11 million.

16.     Also included in Exhibit 4 is a representation and warranty by Mr. Spencer and Mactas that:

> The Policy is not being purchased with the intent of selling it in a settlement or viatical sale, and there have been no offers to sell or buy the Policy. Neither Agent [Mactas], nor Funder [GMC], nor the Trust have recommended such a sale.

(See Exhibit 4, ¶ 4). Mr. Spencer made the same representation and warranty to Lincoln in another document that he executed on March 19, 2007:

7

I have not been involved in any discussion about the possible sale or assignment of this policy as an inducement to purchase the life insurance policy for sale at a later date.

(see Exhibit 5).

17.    Clearly, Exhibit 1 shows that both Mr. Spencer and Mactas made material misrepresentations to the Plan and Lincoln with respect to their intention to defraud the Plan and Lincoln by engaging in a prohibited life settlement transaction. Due to these material misrepresentations (along with the other reasons made clear in Nova's denial of the Universitas claim and appeal), Universitas is entitled to nothing under the Plan.

18.    However, even assuming Universitas were entitled to something, Universitas itself expressed its intention in July 2008 to disclaim all benefits under the Plan in return for a $5 million charitable contribution from Mr. Spencer's widow (see Exhibit 6). Thus, rather than $30 million, $20 million, $15 million, or $11 million, Universitas is entitled to no more than $5 million – assuming it is entitled to anything at all.

19.    However, in May 2008, around the same time that he changed his designation of Universitas from being a revocable to an *irrevocable* beneficiary (see Exhibit 7), Mr. Spencer entered into an oral agreement with GMC whereby GMC would acquire the Lincoln policies from the Plan for six percent (6%) of their face value (6% of $30 million = $1.8 million), Mr. Spencer would terminate his participation in the Plan, and GMC would pay Universitas the $1.8 million. This oral agreement was consummated in April-May 2008, and the change in the beneficiary designation was a result of that agreement.

20.    In June 2008, one month after the oral agreement with GMC had been consummated and before it could be reduced to writing, Mr. Spencer unfortunately passed away.

21.     Thus, rather than $30 million, $20 million, $15 million, $11 million, or even $5 million, had Mr. Spencer not died in June 2008, the maximum that Universitas would have received is $1.8 million – assuming it is entitled to anything at all.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.  Executed on the 30th day of November, 2010.

_____
JACK E. ROBINSON

EXHIBIT 3

AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | ) | NO. 13 195 Y 001558 10 |
| | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NOVA GROUP, INC., | ) | |
| | ) | NOVEMBER 12, 2010 |
| Respondent. | ) | |

## AFFIDAVIT OF WAYNE H. BURSEY

STATE OF CONNECTICUT )
                      ) ss:
COUNTY OF HARTFORD )

    WAYNE H. BURSEY, being duly sworn, deposes and says:

    1.    I am the President of Respondent Nova Group, Inc. ("Nova"), am over the age of eighteen, and believe in the obligation of an oath.

    2.    I submit this affidavit on my personal knowledge and in response to the Order dated November 3, 2010.

    3.    Nova is the Sponsor, Named Fiduciary, Named Trustee, and Administrator of the Charter Oak Trust Welfare Benefit Plan (the "Plan").

    4.    As President of Nova, I am familiar with the Plan's assets and state that the Plan's assets exceed $35 million.

                                                   _WAYNE H. BURSEY_

Subscribed and sworn to before me,
this 12th day of November, 2010.

Notary Public
My Commission Expires: 4/30/12

AMANDA ROSSI
Notary Public, State of Connecticut
My Commission Expires April 30, 2012

580428-v1


RECYCLED

# EXHIBIT B

# UNITED STATES DISTRICT COURT

for the

District of Massachuetts

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC <br> *Plaintiff* | ) ) ) |
| v. | ) Civil Action No. 15-cv-11848-DPW |
| JACK E. ROBINSON, III a/k/a JACK E. ROBINSON <br> *Defendant* | ) ) ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Benistar Admin Services, Inc., c/o The Company Corporation, 2711 Centerville Road, Suite 400, Wilminton, DE 19808

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
See Schedule A attached hereto.

| Place: Loeb & Loeb LLP <br> 345 Park Avenue <br> New York, New York 10154 | Date and Time: <br> March 20, 2017, 10:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| | |
|---|---|
| *CLERK OF COURT* | |
| | OR |
| _____ | /s/ Paula K. Colbath |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Universitas Education, LLC _____ , who issues or requests this subpoena, are:

Paula K. Colbath, Esq., Loeb & Loeb LLP, 345 Park Avenue, New York, NY 10154 (212) 407-4000, pcolbath@loeb.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. _____

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

_____

American LegalNet, Inc.
www.FormsWorkFlow.com

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A TO SUBPOENA TO BENISTAR ADMIN SERVICES, INC.

## DEFINITIONS AND INSTRUCTIONS

1.      This discovery request incorporates and utilizes the Uniform Definitions in Discovery Requests specified in Local Rule 26.5 of United States District Court for the District of Massachusetts, copy attached hereto as **Exhibit 1**, as well as the additional terms listed below which are specific to this litigation:

2.      Any reference to an entity, trust, or plan (*e.g.*, a corporation, LLC, company, plan, or trust) also refers to that entity's predecessors in interest, successors in interest, trustee(s), plan sponsor(s), administrator(s), affiliate(s), affiliated company and/or companies, designee(s), owner(s), shareholder(s), member(s), manager(s), partner(s), entity and/or entities, director(s), officer(s), alter ego(s), agent(s), *de facto* agent(s), *de facto* manager(s), adviser(s), employee(s), representative(s), attorney(s), custodian(s), nominee(s), and any other person or entity retained by or under the direction or control of those parties or acting for or on behalf of those parties.

3.      The term "**Universitas**" as used herein refers to the Plaintiff, Universitas Education, LLC.

4.      The term "**Robinson**" as used herein refers to the Defendant, Jack E. Robinson, III, a/k/a Jack E. Robinson, his employees, agents, servants, attorneys, accountants, advisors, representatives, and any other person acting for him or on his behalf.

5.      The term "**Carpenter**" as used herein refers to Daniel E. Carpenter, his agents, servants, attorneys, representatives, and any other person acting for him or on his behalf.

6.      The term "**Bursey**" as used herein refers to Wayne Bursey, his agents, servants, attorneys, representatives, and any other person acting for him or on his behalf.

7. The term **"BASI"** as used herein refers to Benistar Admin Services, Inc., and its corporate parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, officers, directors, stockholders, owners, members, managers, agents, servants, employees, attorneys, representatives, and any other person or entity retained by or under the direction or control of those parties or acting for or on behalf of those parties.

8. The term **"Lincoln"** as used herein refers to The Lincoln National Life Insurance Company, Lincoln Life Insurance Company, and Lincoln Financial Group, and their corporate parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, officers, directors, stockholders, owners, members, managers, agents, servants, employees, attorneys, representatives, and any other person or entity retained by or under the direction or control of those parties or acting for or on behalf of those parties.

9. The term **"Spencer"** as used herein refers to Sash A. Spencer, his agents, servants, attorneys, representatives, and any other person acting for him or on his behalf.

10. The term **"Caldwell"** as used herein refers to , individually or collectively, Caldwell Life Strategies Corporation, Caldwell Life Strategies LLC, Caldwell Funding Corporation, and Caldwell Life Holdings LLC, and their corporate parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, officers, directors, stockholders, owners, members, managers, agents, servants, employees, attorneys, representatives, and any other person or entity retained by or under the direction or control of those parties or acting for or on behalf of those parties.

11. The term **"Plainfield"** as used herein refers to Plainfield Asset Management LLC, and its corporate parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, officers, directors, stockholders, owners, members, managers, agents, servants, employees,

attorneys, representatives, and any other person or entity retained by or under the direction or control of those parties or acting for or on behalf of those parties.

12.     The term "**Ridgewood Finance**" as used herein refers to Ridgewood Finance Inc. and/or Ridgewood Finance II LLC, and their corporate parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, officers, directors, stockholders, owners, members, managers, agents, servants, employees, attorneys, representatives, and any other person or entity retained by or under the direction or control of those parties or acting for or on behalf of those parties.

13.     The term "**Robinson Declaration**" as used herein refers to the Declaration submitted by Robinson under oath in the Arbitration dated November 30, 2010.

14.     The term "**Confidential Settlement and Indemnification Agreement**" refers to a document titled "Confidential Settlement and Indemnification Agreement," dated October 26, 2009, between Grist Mill Capital, LLC and the Charter Oak Trust Welfare Benefit Plan.

15.     The term "**Alleged Carpenter Enterprise Member**" as used herein includes, for purposes of this document request, each of Carpenter; Molly Carpenter; Bursey; Robinson; J. Edward Waesche IV; Donald Trudeau ("Trudeau"); Kathy Kehoe; Amanda Rossi; Guy Neuman, Caroline Carpenter, Adult Risk Indemnity Association, LLC; Avon Capital, LLC formed under the laws of Delaware, Nevada, Connecticut and/or Wisconsin; BASI; BCNY Litigation Group, LLC; Benefit Concepts, Inc.; Benefit Concepts Advisors, LLC; Benefit Concepts New York; Benefit Plan Advisors, LLC; Benistar; Benistar Ltd.; Benistar 419 Plan Services; Benistar Client Services, Inc.; Benistar Insurance Group; Benistar Insurance Group Holdings, LLC; Benistar Employer Services Trust Corporation; Benistar Property Exchange Transfer Company f/k/a Benistar Property Exchange Trust Company, Inc.; Birch Hill Partners; BPETCO Litigation

Group; Caroline Financial Group, Inc.; Carpenter Financial Group Inc.; Carpenter Financial Group, LLC; Capital City Partners, LLC ; Charter Oak Trust; Charter Oak Trust 2009; Charter Oak Litigation Trust; Birch Hill Partners; Grist Mill Capital LLC; Grist Mill Holdings, LLC; Grist Mill Trust; Grist Mill Trust Welfare Benefit Plan; Hanover Trust Company; Moonstone Partners, LLC; Nova Group, Inc.; Nova Benefit Plans, LLC; Nova Group Holdings, LLC; Nova Partners; Phoenix Capital Management, LLC; Sickness Accident Disability Indemnity Plan and Trust; SADI Trust 2005; TPG Group, Inc.; U.S. Property Exchange; U.S. Benefits Group, Inc.; Worthy Investments, LLC; Carpenter Family Remainder Trust and each of their respective representatives, officers, directors, members, managers, employees, agents, servants, attorneys, accountants, subsidiaries, affiliates, any other person acting for it or on its behalf, and any other person controlled, directed, owned, related to or affiliated with, directly or indirectly, any of the individuals or entities included above.

16.     "You" or "Your" as used herein refers to BASI.

## DOCUMENT REQUESTS

1.      All documents and communications, including but not limited to employment agreements, concerning Robinson's employment with BASI and any Alleged Carpenter Enterprise Member from January 1, 1994 to present.

2.      All Form W-2s and Form 1099s issued to Robinson from January 1, 1994 to the present.

3.      All documents and communications concerning Ridgewood Finance, Plainfield, and/or Caldwell Life Strategies, or any of their attorneys, officers, directors or affiliates, drafted

by Robinson, addressed to Robinson, or in which Robinson was carbon copied or blind carbon copied, from January 1, 2010 through December 31, 2011.

4.      All documents and communications, including but not limited to all negotiations, concerning the Settlement Agreement with Ridgewood Finance, effective as of September 30, 2010.

5.      All documents and communications concerning the Robinson Declaration, copy attached hereto as **Exhibit 2**, including but not limited to all documents and communications concerning any due diligence performed by Robinson regarding the statements in the Robinson Declaration.

6.      All documents concerning payment to Robinson by or on behalf of any Alleged Carpenter Enterprise Member.

7.      All communications (including all Communications with Bursey, Trudeau or Carpenter and drafts thereof), financial information and all other Documents concerning Bursey's November 12, 2010 Affidavit submitted in the Arbitration, copy attached hereto as **Exhibit 3**.

8.      All communications concerning, and drafts of, the Complaint filed on May 5, 2009 in the United States District Court for the District of Connecticut, Civil Action No. 3:09-cv-00735-AWT, styled *Wayne Bursey, Trustee of the Charter Oak Trust Welfare Benefit Plan v. The Lincoln National Life Insurance Company.*

9.      All documents (including drafts) and Communications (including emails) concerning Bursey's letters to Lincoln, including but not limited to, Bursey's letters to Lincoln

dated October 22, 2008, December 11, 2008, December 30, 2008, January 30, 2009, March 6, 2009, April 22, 2009 and April 27, 2009.

10.     All documents and communications concerning and/or discussing the Confidential Settlement and Indemnification Agreement.

11.     All documents sufficient to identify all attorneys who were involved in the negotiation, drafting or execution of the Confidential Settlement and Indemnification Agreement or knowing its existence before October 2013.

12.     Robinson's videotaped deposition video, and any deposition transcripts, from his deposition in the SDNY Action.

13.     All documents sent to or from the United States Attorneys' Office.

14.     A copy or mirror image of the hard drive for any computers used by Robinson.

15.     All documents and communications concerning the payment, disposition, and/or potential or actual past or current location of any proceeds from any insurance policy issued on the life of Sash Spencer.

16.     All documents showing the retention of Robinson or any firm with which Robinson was or is affiliated, as legal counsel.

17.     All documents and communications which evidence, report, constitute or concern any invoices by or directly or indirectly on behalf of Robinson, or any firm with which he was affiliated, concerning any legal services or other services rendered to any Alleged Carpenter Enterprise Member from January 1, 2002 to the present, including all engagement letters, billing

records, time sheets or other records of time spent on any matter, invoices, correspondence, email communications and electronic records.

12700355

EXHIBIT 1

# RULE 26.5 UNIFORM DEFINITIONS IN DISCOVERY REQUESTS

(a) **Incorporation by Reference and Limitations.** The full text of the definitions set forth in paragraph (c) is deemed incorporated by reference into all discovery requests, but shall not preclude

(1) the definition of other terms specific to the particular litigation;

(2) the use of abbreviations; or

(3) a narrower definition of a term defined in paragraph (c).

(b) **Effect on Scope of Discovery.** This rule is not intended to broaden or narrow the scope of discovery permitted by the Federal Rules of Civil Procedure.

(c) **Definitions.** The following definitions apply to all discovery requests:

(1) *Communication.* The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

(2) *Document.* The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

(3) *Identify (With Respect to Persons).* When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(4) *Identify (With Respect to Documents).* When referring to documents, "to identify" means to give, to the extent known, the

(a) type of document;

(b) general subject matter;

(c) date of the document; and

(d) author(s), addressee(s), and recipient(s).

(5) *Parties.* The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(6) *Person.* The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

(7) *Concerning.* The term "concerning" means referring to, describing, evidencing, or constituting.

(8) *State the Basis.* When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall

> (a) identify each and every document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

> (b) identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

> (c) state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory; and

> (d) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

*Adopted effective October 1, 1992.*

# EXHIBIT 2

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | ) | NO. 13 195 Y 001558 10 |
| | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NOVA GROUP, INC., | ) | |
| | ) | |
| Respondent. | ) | NOVEMBER 30, 2010 |

### DECLARATION OF JACK E. ROBINSON

JACK E. ROBINSON, being duly sworn, declares as follows:

1.     I am an authorized representative of respondent Nova Group, Inc. ("Nova"), am over the age of eighteen, and believe in the obligation of an oath.

2.     I submit this declaration on my personal knowledge and in response to the Order dated November 24, 2010.

3.     Nova is the Sponsor, Named Fiduciary, Named Trustee, and Administrator of the Charter Oak Trust Welfare Benefit Plan (the "Plan").

4.     I am familiar with the Plan's operations, assets, liabilities and financial condition, and state that the Plan has the current ability to satisfy a judgment of $30 million.

5.     However, I am also familiar with facts and documents which show that there is no need for the representation contained in Paragraph 4 above because claimant Universitas Education, LLC ("Universitas") is not entitled to **any** benefits under the Plan.

6.     In further support of the representation contained in Paragraph 5 above, I am familiar with and have personal knowledge of the following:

1

(a)     the purpose, development, design and commencement of the Plan in October 2006;

(b)     the involvement of Grist Mill Capital, LLC ("GMC") with respect to funding premiums paid by the Plan;

(c)     the participation in the Plan by Mr. Sash A. Spencer ("Spencer") and his selection of a $20 million Death Benefit instead of a $50 million Death Benefit on the Plan Adoption Agreement that he signed on March 19, 2007;

(d)     Mr. Spencer's agreements with GMC regarding the funding of certain policies on his life for his participation in the Plan;

(e)     the erroneous and unauthorized distribution by insurance brokers of an early draft of a plan document in December 2006 and the completion of the official Plan document in January 2007;

(f)     Mr. Spencer's designation of Universitas first as his *revocable* and then later as his *irrevocable* beneficiary under the Plan;

(g)     Mr. Spencer's misrepresentations to the Plan and Lincoln National Life Insurance Company ("Lincoln") with respect to his intentions to use the Plan to engage in a prohibited life settlement transaction, the true nature of Universitas, and the use to which Universitas was to put any benefits received from the Plan;

(h)     Mr. Spencer's unexpected death in June 2008;

(i)     the numerous communications and discussions (including threats of litigation), from literally a few days after Mr. Spencer's death in June 2008 until the commencement of this arbitration by Universitas two years later in June 2010, between and among Nova, the Plan, Mr. Spencer's widow, Universitas, Mr. Spencer's employer

Holding Capital Group, Inc. ("Holding Capital"), insurance broker Bruce Mactas ("Mactas"), and their respective legal and financial advisors;

(j)     the facts that notwithstanding all of the aforementioned communications and discussions, that Universitas was represented by counsel at all relevant times, and that Universitas had a copy of the Plan document in its possession at all relevant times, Universitas did not file a claim for benefits under the Plan until **several months after** the claims deadline had expired, and only after it had been instructed several times to do so by Nova;

(k)     the draft July 2008 agreement whereby Universitas expressed its intention to disclaim **all** Plan benefits in return for a $5 million charitable contribution by Mr. Spencer's widow;

(l)     the illicit and unlawful November 2008 settlement agreement whereby Holding Capital and Mactas were to receive illegal distributions of Plan benefits;

(m)     the back-dated September 2009 "Termination Agreement" whereby the illegal distributions described in Paragraph 6(l) above were allegedly rescinded;

(n)     Nova's denial of Universitas' claim for benefits under the Plan;

(o)     the facts that Universitas filed an appeal of the denial of its claim for Plan benefits with the wrong person at the wrong address and, as a result, the appeal was not received by Nova until **two weeks after** the deadline for filing an appeal had expired;

(p)     Universitas' multiple threats of litigation against the Plan in violation of the Plan's provisions – both before and during this arbitration;

(q)     Nova's denial of Universitas' appeal of the denial of its claim for Plan benefits;

3

(r)     Nova's discovery after the arbitration had commenced that Holding Capital had changed its structure and, notwithstanding the Termination Agreement, retains an expectancy to receive illegal distributions of Plan benefits; and

(s)     the facts that had Mr. Spencer not died unexpectedly but had lived to consummate his oral agreement with GMC later in 2008, Universitas would have received a total payment of $1.8 million and GMC would have received ownership of the Lincoln insurance policies on Mr. Spencer's life.

7.     Unbeknownst to Nova at the time, in December 2006, Mr. Spencer and Mactas planned to engage in a prohibited life settlement transaction by using the Plan to obtain **$50 million** in life insurance on Mr. Spencer's life and, after the two-year contestability period expired on the life insurance policies in December 2008, terminate Mr. Spencer's participation in the Plan, acquire ownership of the policies, and then sell the policies in the secondary market for a total profit to Mr. Spencer and Mactas of between $10 million and $14 million (see Exhibit 1).

8.     Although Mactas caused Mr. Spencer to execute various Plan documents in December 2006, the final Plan documents executed by Mr. Spencer on March 19, 2007 automatically superseded and replaced all prior Plan documents (not only because they were executed later in time but because the Plan Documents executed in December 2006 were drafts).  This is evidenced by the new Adoption Agreement executed by Mr. Spencer on March 19, 2007 whereby Mr. Spencer, **in his own handwriting**, crossed out the initial $50 million Death Benefit that he and Mactas had envisioned in December 2006 and, instead, selected a **$20 million Death Benefit** (see Exhibit 2).

4

9. Further evidence of Mr. Spencer selecting a $20 million Death Benefit instead of a $50 million (or $30 million) Death Benefit is found in Exhibit 3, where Mr. Spencer **again in his own handwriting** crossed out the $50 million Death Benefit and instead wrote "$20 MILION[sic]."

10. Thus, the maximum potential Death Benefit in this case is not $30 million as claimed by Universitas but rather $20 million as chosen by Mr. Spencer, **in his own handwriting**, on two separate occasions.

11. Although the total Death Benefit is $20 million, the Plan obtained insurance coverage on Mr. Spencer's life in the amount of $30 million by virtue of an earlier $10 million policy taken out by the Plan in December 2006. It is not unusual for the Plan to "overfund" its contingent liability if, as and when it has the opportunity to do so in order to provide more funding to the Plan, and especially when there is no up-front "cost" to the insured to acquire the insurance coverage.

12. Since GMC provided **all** of the money to obtain the insurance coverage on Mr. Spencer's life (a fact which Universitas concedes), Mr. Spencer, Mactas and Mr. Daniel E. Carpenter (on behalf of GMC) executed a Disclosure, Acknowledgement & Certification Agreement dated March 19, 2007 describing how the net Death Benefit would be calculated (see Exhibit 4). The calculation according to that agreement, **using the draft version of the Plan document that does *NOT* include the 80% pay-out provision in Plan § 6.01**, is as follows:

| Total Death Benefit | | $ 20,000,000.00 |
|---|---|---|

**Less:**

(i)    repayment of all payments, contributions and related costs funded by GMC on the $30 million in policies (§10(a))

| | premiums | $ 2,322,305.79 | |
|---|---|---|---|
| | funding costs | $    835,394.83 | |
| | Total amount funded | | $ 3,157,700.62 |

(ii)    Origination Fee of 20% of the total amount funded (§10(b))    $    631,540.12

(iii)    Placement Fee of 2% of the total face amount of the $30 million in policies (§10(c))    $    600,000.00

| Total Deductions | | $ 4,389,240.74 |
|---|---|---|

**Equals:**

**Net Death Benefit**      **$ 15,610,759.26**

13.      Thus, far from $30 million or even $20 million, the **maximum** benefit to which Universitas could be entitled under its own "best case" scenario (*i.e.*, the draft version of the Plan document that does not include the 80% pay-out provision in Plan § 6.01) is roughly $15 million.

14.      However, the official version of the Plan does include the 80% pay-out provision in Plan § 6.01. Under the official version of the Plan, the **maximum** benefit to which Universitas could be entitled is calculated as follows:

| | | |
|---|---|---|
| Total Death Benefit | | $ 20,000,000.00 |
| (i) | 80% of the amount in the Adoption Agreement (Plan § 6.01) | $ 16,000,000.00 |

**Less:**

| | | |
|---|---|---|
| (ii) | repayment of all payments, contributions and related costs funded by GMC on the $30 million in policies (§10(a)) | |

| | | |
|---|---|---|
| | premiums | $ 2,322,305.79 |
| | funding costs | $ 835,394.83 |

| | | |
|---|---|---|
| | Total amount funded | $ 3,157,700.62 |
| (iii) | Origination Fee of 20% of the total amount funded (§10(b)) | $ 631,540.12 |
| (iv) | Placement Fee of 2% of the total face amount of the $30 million in policies (§10(c)) | $ 600,000.00 |
| Total Deductions | | $ 4,389,240.74 |

**Equals:**

| | |
|---|---|
| **Net Death Benefit** | **$ 11,610,759.26** |

15.     Thus, far from $30 million, $20 million, or even $15 million, the **maximum** benefit to which Universitas could be entitled under the official version of the Plan is roughly $ 11 million.

16.     Also included in Exhibit 4 is a representation and warranty by Mr. Spencer and Mactas that:

> The Policy is not being purchased with the intent of selling it in a settlement or viatical sale, and there have been no offers to sell or buy the Policy.  Neither Agent [Mactas], nor Funder [GMC], nor the Trust have recommended such a sale.

(See Exhibit 4, ¶ 4).  Mr. Spencer made the same representation and warranty to Lincoln in another document that he executed on March 19, 2007:

I have not been involved in any discussion about the possible sale or assignment of this policy as an inducement to purchase the life insurance policy for sale at a later date.

(see Exhibit 5).

17.     Clearly, Exhibit 1 shows that both Mr. Spencer and Mactas made material misrepresentations to the Plan and Lincoln with respect to their intention to defraud the Plan and Lincoln by engaging in a prohibited life settlement transaction. Due to these material misrepresentations (along with the other reasons made clear in Nova's denial of the Universitas claim and appeal), Universitas is entitled to nothing under the Plan.

18.     However, even assuming Universitas were entitled to something, Universitas itself expressed its intention in July 2008 to disclaim all benefits under the Plan in return for a $5 million charitable contribution from Mr. Spencer's widow (see Exhibit 6). Thus, rather than $30 million, $20 million, $15 million, or $11 million, Universitas is entitled to no more than $5 million – assuming it is entitled to anything at all.

19.     However, in May 2008, around the same time that he changed his designation of Universitas from being a revocable to an *irrevocable* beneficiary (see Exhibit 7), Mr. Spencer entered into an oral agreement with GMC whereby GMC would acquire the Lincoln policies from the Plan for six percent (6%) of their face value (6% of $30 million = $1.8 million), Mr. Spencer would terminate his participation in the Plan, and GMC would pay Universitas the $1.8 million. This oral agreement was consummated in April-May 2008, and the change in the beneficiary designation was a result of that agreement.

20.     In June 2008, one month after the oral agreement with GMC had been consummated and before it could be reduced to writing, Mr. Spencer unfortunately passed away.

21.     Thus, rather than $30 million, $20 million, $15 million, $11 million, or even $5 million, had Mr. Spencer not died in June 2008, the maximum that Universitas would have received is $1.8 million – assuming it is entitled to anything at all.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.  Executed on the 30th day of November, 2010.

_____
JACK E. ROBINSON

# EXHIBIT 3

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | ) | NO. 13 195 Y 001558 10 |
| | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NOVA GROUP, INC., | ) | |
| | ) | NOVEMBER 12, 2010 |
| Respondent. | ) | |

## AFFIDAVIT OF WAYNE H. BURSEY

STATE OF CONNECTICUT )
                    ) ss:
COUNTY OF HARTFORD )

      WAYNE H. BURSEY, being duly sworn, deposes and says:

      1.     I am the President of Respondent Nova Group, Inc. ("Nova"), am over the age of eighteen, and believe in the obligation of an oath.

      2.     I submit this affidavit on my personal knowledge and in response to the Order dated November 3, 2010.

      3.     Nova is the Sponsor, Named Fiduciary, Named Trustee, and Administrator of the Charter Oak Trust Welfare Benefit Plan (the "Plan").

      4.     As President of Nova, I am familiar with the Plan's assets and state that the Plan's assets exceed $35 million.

_____
WAYNE H. BURSEY

Subscribed and sworn to before me,
this 12th day of November, 2010.

_____
Notary Public
My Commission Expires: 4/30/12

580428-v1

AMANDA ROSSI
Notary Public, State of Connecticut
My Commission Expires April 30, 2012